[Civ. No. 41921. First Dist., Div. One. Sept. 8, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE CENTRAL JUDICIAL
DISTRICT OF MARIN COUNTY, Defendant and Respondent;
ROBERT MICHAEL GELARDI,
Real Party in Interest and Respondent.

COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Timothy A. Reardon and Don Jacobson, Deputy Attorneys General, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

David Childers for Real Party in Interest and Respondent.

OPINION

**ELKINGTON, J.**—Judges of the Municipal Court for the Central Judicial District of Marin County (hereafter sometimes Municipal Court), or some of them, have developed and sometimes engaged in a practice, in respect of persons awaiting trial for misdemeanor offenses, which is perhaps best exemplified by the following selected portions of the court's minute orders.

"Pursuant to pre-trial conference Court ordered case to be continued 6 months . . . over the objection by the People. . . . Case continued . . . for . . . possible dismissal."

"People feel the defendant should be on probation and the People are prepared to go to jury trial. Court ordered case continued to 2/14/77 [five months later] at 2:00 P.M. for possible dismissal if no further violation by the defendant."

"Court indicates that pursuant to the pre-trial conference discussions he will continue this case for one year for possible dismissal if defendant . . . is not involved in any other illegal acts. Case continued to 1/11/78 at 1:30 p.m. for possible dismissal . . . Mr. Courteau [the prosecutor] states . . . that the People are not a part of the disposition indicated and disagreed with the same at the pre-trial conference and feel it an abuse of the court's discretion; . . ."

"Matter having been discussed in chambers by court and counsel, court states he is prepared to continue the case six months for dismissal on condition the defendant does not contact the victim, . . . and conduct

himself in a law-abiding fashion throughout the probationary period. Time waived. People state they would like the record to reflect their objection to this disposition. Case continued to 2/23/77 at 1:30 p.m. for possible dismissal."

Robert Michael Gelardi, the real party in interest of this appeal, was charged in the Municipal Court with the misdemeanor violation of Penal Code section 417, to wit, brandishing a weapon. Following its above described practice and over the People's objection, the court continued the case six months for "possible dismissal." Thereafter, before dismissal and within the six-month period, the People sought to nullify the court's "illegal action" by petition to the superior court "for a Writ of Prohibition and/or Mandate . . . ."

The superior court ordered the writ application denied, apparently on the theory that the People's only remedy lay in an appeal, under Penal Code section 1466, subdivision 1(a), from the contemplated order of dismissal, when and if entered. The People have appealed from the order denying the extraordinary writ.

It is of significance, as will hereafter appear, (1) that the order of "continuance for dismissal" was made before the court had entered upon *a trial* of the charge against Gelardi, and (2) that such an order of continuance is not an *appealable order.* (See Pen. Code, § 1466, subd. 1.)

As he did in the superior court, Gelardi here contends, relying on *People* v. *Superior Court (Howard),* 69 Cal.2d 491 [72 Cal.Rptr. 330, 446 P.2d 138], that the writ of prohibition or mandate was not legally available to the People for review of the Municipal Court's order.

In *People* v. *Superior Court (Howard), supra,* a jury had found Howard guilty of robbery. Thereafter the trial court, finding the evidence of guilt to be of little weight, dismissed the information in the "interests of justice" as was, at least arguably, permitted by Penal Code section 1385. The People sought from the high court a writ of mandate compelling the trial court to vacate its order of dismissal. The application was denied, and the court's reasons therefor may be summarized in this manner:

"The Legislature has determined that except under certain limited circumstances the People shall have no right of appeal in criminal cases." (69 Cal.2d, p. 497.) "The restriction on the People's right to appeal is not merely a procedural limitation allocating appellate review between direct

appeals and extraordinary writs but is a substantive limitation on review of trial court determinations in criminal trials." (*Id.,* p. 498.) "To permit the People to resort to an extraordinary writ to review where there is no right to appeal would be to give the People the very appeal which the Legislature has denied to them." (*Id.,* p. 499.) "Assuming that in some cases the matter may be of such importance that mandate may be available to the People to review determinations where appeal does not lie, we are satisfied that the proper balancing of these considerations prohibits review by mandate at the request of the People where, as here, there is a danger of further trial or retrial. Such a rule will give meaningful effect to the legislative policy limiting review and the burdens on the defendant. [Certain earlier cases] which permitted the issuance of mandate where there was a danger of retrial, are disapproved." (*Id.,* p. 501.)

It is worthy of emphasis here that *People* v. *Superior Court (Howard), supra,* 69 Cal.2d 491, forbade proceedings by the People for extraordinary writs *only* where "there is a danger of further trial or retrial." In the case at bench there had been neither trial nor jeopardy, nor would invalidation of the Municipal Court's order result in "further trial or retrial."

*People* v. *Superior Court (Edmonds),* 4 Cal.3d 605, 609 [94 Cal.Rptr. 250, 483 P.2d 1202], thereafter held in a case where there was no danger of "further trial or retrial," that "mandate [on request of the People] would be appropriate under the principles set forth in *People* v. *Superior Court* [*Howard*], . . ."

We find further elaboration of the rule of *People* v. *Superior Court (Howard)* in decisions of the Court of Appeal.

*People* v. *Superior Court (Lozano),* 69 Cal.App.3d 57, 62 [137 Cal.Rptr. 767]. "Moreover, in our view *People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491 . . . does not foreclose to the People review by writ in all cases in which there was no remedy by appeal. . . . [Since] in the instant case the order was made before there was any trial and therefore jeopardy had not attached," an extraordinary writ was properly granted.

*People* v. *Superior Court (Brodie),* 48 Cal.App.3d 195 [121 Cal.Rptr. 732]. Here the reviewing court, on motion of the People and before trial, granted a writ of mandate requiring the superior court to set aside a pretrial order striking "an allegation of special circumstance" from an information charging murder. The court said (pp. 200-201): "When a

trial judge strikes out such an allegation solely because of a misinterpretation of the statute, its order is in excess of its jurisdiction. (See *Howard, supra,* 69 Cal.2d at p. 500.) In the case at bench, considering the gravity of the charge, the importance of the issue and the absence of any showing of prejudice by the delay involved in the review procedure, a weighing of the factors referred to in the *Howard* opinion does not preclude review by this mandate proceeding."

*People* v. *Superior Court (Montano),* 26 Cal.App.3d 668, 670, 671 [102 Cal.Rptr. 925]. The court granted mandate compelling the superior court to set aside a pretrial order of dismissal which order, it concluded, would " 'stultify the statutory scheme . . . .' " Finding the case "unlike *Howard,*" and the dismissal to be "beyond the court's [statutory] power," it stated that "[s]ince there is no danger of [further] trial or retrial, the writ of mandate may properly issue to correct an abuse of discretion . . . ."

*People* v. *Superior Court (Biggs),* 19 Cal.App.3d 522 [97 Cal.Rptr. 118]. The People's application for prohibition to set aside an erroneous dismissal was denied, but only because the dismissal was ordered by the superior court *after commencement of trial* of the action. The court said (p. 535): "[A]s we view *People* v. *Superior Court (Howard), supra,* the absence of a statutory prosecution appeal expresses a legislative policy against exposing the accused to a possible retrial, even though the policy transmutes an erroneous trial court ruling into an erroneous dismissal. This court is without power to issue the writ of prohibition because the writ would expose the accused to a possible retrial."

*People* v. *Thompson,* 10 Cal.App.3d 129 [88 Cal.Rptr. 753]. Finding no danger of "a further trial or retrial" the appellate court, after a thorough analysis of *People* v. *Superior Court (Howard), supra,* 69 Cal.2d 491 "let a peremptory writ of mandate issue directing the [superior court] to annul its order . . . which set aside the guilty plea" without statutory sanction. (P. 138.)

Notable also are the several judicial comments that extraordinary writs will more readily be granted on the People's request where, as here: there is no prosecutorial "harassment" of the accused (see *People* v. *Thompson, supra,* 10 Cal.App.3d 129, 137); the issue does not "involve any question of guilt or innocence" (*People* v. *Superior Court (Lozano), supra,* 69 Cal.App.3d 57, 62); and the case is of "significant public interest" (*People* v. *Superior Court (Lozano), supra,* p. 62; *People* v. *Superior Court (Montano), supra,* p. 670).

■ It will be observed from the foregoing that mandate or prohibition may be allowed, before trial of an accused and on the People's application, to rectify such "excess of jurisdiction" of the trial court "because of a misinterpretation of the statute" *(People* v. *Superior Court (Brodie), supra,* 48 Cal.App.3d 195, 200-201), or "failure to follow a decision by the Court of Appeal directly in point" *(People* v. *Superior Court (Lozano), supra,* 69 Cal.App.3d 57, 61), or a ruling prohibited, or unauthorized, by statute *(People* v. *Superior Court (Montano), supra,* 26 Cal.App.3d 668, 671; *People* v. *Superior Court (Biggs), supra,* 19 Cal.App.3d 522, 534-535), or an "abuse of discretion" in vacating a guilty plea *(People* v. *Thompson, supra,* 10 Cal.App.3d 129, 137).

■ Patently, the here discussed practice of the Municipal Court is designed to effectuate a sort of nonstatutory diversion, probation, or rehabilitation procedure prior to the accused's conviction of crime, by holding out to him the promise of dismissal under Penal Code section 1385 upon his future good behavior. On this subject the state's Legislature and reviewing courts have spoken.

*People* v. *Orin,* 13 Cal.3d 937, 946-947 [120 Cal.Rptr. 65, 533 P.2d 193], states:

"[A]ppellate courts have shown considerable opposition to the granting of dismissals under section 1385 in instances where the People are thereby prevented from prosecuting defendants for offenses of which there is probable cause to believe they are guilty as charged. Courts have recognized that society, represented by the People, has a legitimate interest in 'the fair prosecution of crimes properly alleged.' . . . ' "[A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion." . . .'

"Permitting trial judges to make liberal use of section 1385 to avoid criminal prosecutions where probable cause exists to believe conviction is warranted would be contrary to the adversary nature of our criminal procedure as prescribed by the Legislature. . . . Under the statutory scheme which has been established for the prosecution of crimes, the district attorney is required to 'institute proceedings before magistrates for the arrest of persons charged with or reasonably suspected of public offenses when he has information that such offenses have been commit-

ted.' (Gov. Code, § 26501.) The committing magistrate *must* hold the defendant to answer 'if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.' . . . Under ordinary circumstances, it would frustrate the orderly and effective operation of our criminal procedure as envisioned by the Legislature if without proper and adequate reason section 1385 were used to terminate the prosecution of defendants for crimes properly charged in accordance with legal procedure."

In the same vein *People* v. *McAlonan*, 22 Cal.App.3d 982, 986-987 [99 Cal.Rptr. 733], tells us:

"Since an order of dismissal under Penal Code section 1385 is a matter of public concern . . . , proper dismissal under the section' requires a balancing of society's interest against that of the defendant. Sincere though an individual judge's belief may be that a guilty defendant's rehabilitation would be facilitated by avoiding conviction, we are convinced society's interest that justice be dispensed with an even hand and in accordance with statutory authority precludes use of the dismissal statute to avoid conviction.

"After conviction, the Legislature has wisely provided judges with alternatives which they may properly consider in the sentencing process. As to the crime with which defendant was charged, these alternatives are set forth in Health and Safety Code sections 11530 and 11710 et seq. Among other things, these statutes are concerned with rehabilitation and the limits within which courts may properly act to effect it. Under the circumstances of this case, we are convinced the dismissal provisions of Penal Code section 1385 cannot be used for rehabilitative purposes. To hold otherwise would completely stultify the statutory scheme and would exalt the rule of men above the rule of law."

And expressly and immediately bearing upon the *continuances* with which we are concerned, Penal Code section 1050 asserts:

"The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time. To this end the Legislature finds

that the criminal courts are becoming increasingly congested with resulting adverse consequences to the welfare of the people and the defendant. It is therefore recognized that both the people and the defendant have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both the prosecution and the defense, to expedite such proceedings to the greatest degree that is consistent with the ends of justice. . . .

"To continue any hearing in a criminal proceeding, including the trial, a written notice must be filed within two court days of the hearing sought to be continued, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance. Continuances shall be granted only upon a showing of good cause. The convenience of the parties is not in and of itself good cause. . . ."

Another legislative consideration is noted. The high court in *In re Lane,* 58 Cal.2d 99, 102 [22 Cal.Rptr. 857, 372 P.2d 897], stated: "Whenever the Legislature has seen fit to adopt a general scheme for the regulation of a particular subject, the entire control over whatever phases of the subject are covered by state legislation ceases as far as local legislation is concerned." In this state the Legislature has formulated statutory schemes for diversion (see Pen. Code, § 1000 et seq.), probation, and rehabilitation of the criminally inclined or involved. Although *In re Lane* applies to "local legislation," its rationale would seem to apply reasonably and equally to trial courts; they should not substitute their own rehabilitation concepts for those of the Legislature.

In adopting and following the judicial practice at issue, we conclude that the Municipal Court has made rulings prohibited, or unauthorized, by statute (see *People* v. *Superior Court (Montano), supra,* 26 Cal.App.3d 668, 671; *People* v. *Superior Court (Biggs), supra,* 19 Cal.App.3d 522, 534-535; *People* v. *Thompson, supra,* 10 Cal.App.3d 129, 137), and has failed "to follow a decision by [the Supreme Court and by] the Court of Appeal directly in point" (see *People* v. *Superior Court (Lozano), supra,* 69 Cal.App.3d 57, 61). The practice was thus in excess of the Municipal Court's jurisdiction. The superior court should have permitted, and ruled favorably upon, the People's application for an extraordinary writ.

We observe nothing in the Penal Code's newly enacted (eff. Sept. 13, 1977) chapter 2.7, sections 1001-1001.11, entitled "Diversion," which authorizes the above described "continuance," "dismissal," and "rehabil-

itation" procedures. Further, those statutes were not in effect at the time of the criticized orders.

The judgment is reversed, and the superior court will issue an appropriate peremptory writ as requested by the People.

Racanelli, P. J., and Devine, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.