Filed 5/9/24

## TO BE PUBLISHED IN THE OFFICIAL REPORTS

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

**APPELLATE DIVISION**

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff(s) and Appellant(s), <br><br> v. <br><br> JACQUELINE SHANICE ROBINSON, <br><br> Defendant(s) and Respondent(s). | Appellate Division No.: CA296058 <br> Trial Court Case No.:  M286318 <br> Trial Court Location:  Central Division <br><br><br> **DECISION/STATEMENT OF REASONS (CCP § 77(d)) BY THE COURT** |

### PER CURIAM OPINION

THE COURT.

APPEAL by People of the State of California, Plaintiff, from the plea entered June 26, 2023, in the Superior Court, San Diego County, Peter L. Gallagher, Judge.

REVERSED and REMANDED.

### I. Factual and Procedural Background

The prosecution filed a complaint against Ms. Robinson on May 5, 2023. It charged her with two misdemeanor violations of Penal Code section 273a, subdivision (b). Ms. Robinson was arraigned on June 12, 2023, and entered pleas of not guilty. A readiness conference was held on June 26, 2023. The discussions about the case and its potential for settlement took place off the record and were not recorded.

---

**DECISION/STATEMENT OF REASONS (CCP § 77(d)) BY THE COURT**

On the afternoon of June 26, 2023, Ms. Robinson pleaded guilty to both charges against her before the Honorable Peter Gallagher. Ms. Robinson was advised of her right to a speedy sentencing and waived that right. The court indicated that if Ms. Robinson completed 52 weeks of parenting classes prior to her sentencing date it would exercise its discretion to dismiss the charges to which she had pleaded guilty. Appellant objected to the court's indicated sentence and to setting a sentencing date past 120, days calling it a violation of Penal Code section 1449. Appellant also argued the court was unlawfully permitting a diversion plan.

The court set a sentencing date of September 26, 2024. At this time Ms. Robinson stands convicted of both misdemeanor charges against her.

Appellant's recitation of the facts of the case at the hearing was: "Here, we have a three-year-old and 11-month-old left alone at home. One's found face down on the bed with no railings. The house is in disarray. There's rotting food everywhere, flies and gnats inside the home, mattresses with huge burnt holes in them, stained carpet, essentially what you would think of as a very traditional misdemeanor child neglect case." Respondent did not contradict that recitation of facts.

## II. Discussion

### A. Penal Code section 1449 is directory not mandatory, therefore there is no reversible error from sentencing being outside that section's timeframes.

The legislature imposing time limits on judicial functions raises separation of powers concerns. (*Briggs v. Brown* (2017) 3 Cal.5th 808, 849.) The California Supreme Court has held that "unless a consequence or penalty is provided for failure to do the act within the time commanded", a legislative time limitation is not mandatory. (*Ibid*.)

Penal Code section 1449 puts limitations on how long misdemeanor sentencings can be continued. But it contains no consequence or penalty for the failure to act within those time frames. Nor does any other code section contain a consequence or penalty for the failure to act. Therefore, Penal Code section 1449's timeframes are merely directory.

Penal Code section 1191 is the analogous statute for felony sentencing hearings. While section 1191 does not itself contain a consequence or penalty for failure to act within its

timeframes, Penal Code section 1202 does. The consequence for a failure to comply with the timeframes under section 1191 is that the defendant is entitled to a new trial.

*Ex parte Hemstreet* (1912) 18 Cal.App. 639, 641, applies Penal Code section 1202 to misdemeanors, though the statute applies specifically to felonies. That is not the legislature including a consequence or penalty to make Penal Code 1449 more than directory. But even if the timeframes were treated as mandatory, the right to the sentencing being pronounced in those timeframes is a right personal to the defendant because there is only a remedy for the defendant and not the People. In this case, Respondent agreed to the continuance, waiving that personal right to the section 1449 timeframes. Therefore, there is no reversible error from exceeding those timeframes even if they are viewed as mandatory.

**B.      Existing case law prohibits setting a case out with a tentative to dismiss conditioned on behavior during that time period.**

*People v. Municipal Court* (*Gelardi*) (1978) 84 Cal.App.3d 692 held that it was "prohibited, or unauthorized, by statute" and in excess of the court's jurisdiction to continue sentencing out 6 months with a tentative to dismiss if the defendant remained law abiding. (*Id.* at p. 700.) There is no contrary appellate decision and no appellate court has found the case overruled or superseded. Until—and unless—an appellate court modifies *Gelardi*, this Court—a court of superior court judges—does not have the authority to disregard existing case law from a court of appeal. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 197–198; *People v. Franc* (1990) 218 Cal.App.3d 588, 593–594.)

The trial court's conduct in this case mirrors that of the trial court in *Gelardi*. The only significant difference is that in addition to remaining law abiding the defendant here was required to complete 52 weeks of parenting classes. That difference does not appear significant to the reasoning of why the *Gelardi* court found the tentative impermissible.

**C.      Because this Court is reversing based on *Gelardi*, the Court will not address whether the trial court engaged in impermissible plea bargaining.**

As this Court is reversing on another ground, there is not a need to resolve whether the trial court engaged in impermissible plea bargaining.

/ / /

-3-

### III. Conclusion

Because there is controlling case law that prohibits the form of tentative given here, the trial court erred in its tentative to continue 14 months and dismiss if the defendant completed 52 weeks of parenting classes.

The judgment of the trial court is REVERSED and REMANDED. The defendant shall be permitted to withdraw her plea as it was entered with an expectation of something that is not permissible.

**BIRCHAK, J.**, concurring:

I agree and participate in the majority's opinion. But—while finding *Gelardi* is controlling authority—believe it was wrongly decided or has been superseded by changes in the law. The trial court in *Gelardi*—and here—simply combined the exercise of powers that fall squarely into judicial authority: controlling the disposition of causes on its docket and dismissing charges. Controlling the disposition of cases is inherently a court function. The California Supreme Court has "long recognized that imposing fixed time limits on the performance of judicial functions raises serious separation of powers concerns." (*Briggs v. Brown* (2017) 3 Cal.5th 808, 849.) "Deciding cases and managing dockets are quintessentially core judicial functions. They are grounded in the Constitution and may not be materially impaired by statute." (*Id.* at p. 858.) The Court has long held that a "time limitation for the court's action in a matter subject to its determination is not mandatory (regardless of the mandatory nature of the language), unless a consequence or penalty is provided for failure to do the act within the time commanded." (*Garrison v. Rourke* (1948) 32 Cal.2d 430, 435–436 overruled on other grounds by *Keane v. Smith* (1971) 4 Cal.3d 932.) The Court in *Gelardi* did not consider these separation of powers issues in its consideration of the trial court's authority to continue a case over the People's objection. Therefore, its analysis of that issue is flawed.

The dismissal of charges is the exclusive authority of the judicial branch, not the executive branch. "'[S]ections 1385 and 1386, enacted in 1872, codify California's rejection of the English rule of nolle prosequi, under which the prosecutor alone had authority to discontinue a prosecution,

in favor of granting **sole authority** to the courts to dismiss actions in furtherance of justice.'" (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 491 [emphasis added].) "[O]nce a district attorney files charges and invokes the court's jurisdiction, only the court, not the district attorney, can dismiss an action or enhancement under section 1385." (*Id*. at pp. 499-500.) And the California Supreme Court has indicated that they "perceive no statutory or constitutional basis for [an] objection that a trial court's ordinary sentencing discretion necessarily excludes the power to dismiss under section 1385 in the context of an indicated sentence." (*People v. Clancey* (2013) 56 Cal.4th 562, 580.) In *Clancey*, the Supreme Court discussed the meaning of *People v. Orin* in great detail. (*Id*. at pp. 479-483.) The Court in *Gelardi* cites *Orin* in a way that implies a court cannot include exercise of Penal Code section 1385 as part of a tentative. But *Gelardi* omits some of the critical parts of *Orin* discussed by the Supreme Court in *Clancey* that explicitly indicate a court's ability to include exercise of Penal Code section 1385 in a tentative. The Supreme Court in *Clancey* also indicated that for concerns about misuse of the court's power under section 1385 the "remedy is not to carve out new exceptions to section 1385, as *Woosley* did, but to enforce the limitations set forth in section 1385 itself through appellate review." (Id. at 581.) Therefore—especially in light of the later clarification in *Clancey*—much of the *Gelardi* ruling appears to rely on a misreading of *Orin*.

A court is not prohibited from considering rehabilitative actions that a defendant has taken when considering dismissal under Penal Code section 1385. Courts have been held to err when they have not considered rehabilitative efforts. (*People v. Yanaga* (2020) 58 Cal.App.5th 619.) In the context of resentencing, it has been held to be ineffective assistance of counsel not to argue and present evidence of rehabilitative actions for purposes of Penal Code section 1385 dismissal. (*People v. Ruiz* (2023) 89 Cal.App.5th 324, 334.) Therefore, a tentative that takes into account the possibility of rehabilitative efforts does not seem impermissible.

Despite the trial court's agreement with Appellant's accusation that it was creating an impermissible diversion, what the trial court did in this case is not a diversion. And what the trial court in *Gelardi* did was not a diversion—at least as that term is currently used. Diversions do not require an admission of guilt. In both cases, there was an admission of guilt. Under the recently

**DECISION/STATEMENT OF REASONS (CCP § 77(d)) BY THE COURT**

created section 1001.95 diversion, if diversion is granted and successfully completed, "the arrest upon which diversion was imposed shall be deemed to have never occurred. The defendant may indicate in response to any question concerning their prior criminal record that they were not arrested. A record pertaining to an arrest resulting in successful completion of the terms, conditions, or programs ordered by the court shall not, without the defendant's consent, be used in any way that could result in the denial of any employment, benefit, license, or certificate." (Pen. Code, § 1001.97, subd. (a).) This effect is one of the primary benefits of a diversion. The tentative given by the trial court did not include any suggestion of any such relief. Every legislatively created diversion has similar language. (Pen. Code, § 1000.4, Pen. Code, § 1001.9, subd. (a), Pen. Code, § 1001.33, subd. (a), Pen. Code, § 1001.36, subd. (h), Pen. Code, § 1001.55, subd. (a), Pen. Code, § 1001.75.) This tentative does not purport to have such an effect, nor did the tentative in *Gelardi*. Therefore, neither can truly be said to be a diversion.

The tentative in this matter is much more akin to a deferred entry of judgment where a defendant pleads guilty, completes conditions, and then receives a dismissal. (See for example Penal Code, § 1000.9.) But like diversion, a deferred entry of judgment comes with a relief not contemplated under this trial court's tentative. "A defendant's plea of guilty shall not constitute a conviction for any purpose unless a judgment of guilty is entered pursuant to Section 1000.3." (Pen. Code, § 1000.10, subd. (a).) The absence of this type of relief from the tentative is significant, as this type of relief is something that courts do not have the inherent power to do. And it appears that the California Legislative Counsel believes courts have the authority to do this without any additional legislation. "Defendant urges us to give 'great weight' to the November 4, 2014, Legislative Counsel opinion cited by the trial court in its July 25, 2016, minute order. In that opinion, the Legislative Counsel concluded, apart from the statutory misdemeanor diversion programs, a trial court has the authority to accept a plea of guilty or no contest from a defendant on a misdemeanor charge, defer sentencing to enable the defendant to satisfy court-imposed conditions during the period of deferment, and then dismiss the charge, so long as the court does not impose conditions that could be construed as ad hoc penalties and the plea is not the result of a judicial plea bargain." (*People v. Marroquin* (2017) 15 Cal.App.5th Supp. 31.)

In some ways the court's tentative of a dismissal leads to a worse outcome for Respondent in terms of criminal history than an actual sentence or grant of probation would. Because there is no probation, Respondent would not be eligible for relief under Penal Code section 1203.4. Because there would be no pronouncement of judgment or sentence, Respondent would not be eligible for relief under Penal Code section 1203.4a. Nor would Respondent be eligible for relief under Penal Code section 851.6, because there was an accusatory pleading filed. And the Respondent would not be eligible for relief under Penal Code section 851.8, because the plea of guilty precludes a finding of factual innocence. Nor would Respondent be eligible for relief under Penal Code section 851.91, because the plea acts as a conviction for purposes of that statute. Courts have held that "in light of defendant's no contest plea, we cannot conclude 'no conviction occurred' such that defendant should be entitled to relief under section 851.91, subdivision (a)(1)(B)(i)." (*People v. D.C.* (2020) 54 Cal.App.5th 727, 735.) Therefore, in many ways a denial of probation or a short probation grant would be more beneficial to the defendant than a dismissal after a plea.

The Legislature has made significant changes to the law since *Gelardi* that undercut that court's reasoning.

The Legislature just recently enacted Penal Code section 17.2. That includes that "[i]t is the intent of the Legislature that the disposition of any criminal case use the least restrictive means available." (Pen. Code, § 17.2, subd. (a).) And it includes that a "court presiding over a criminal matter shall consider alternatives to incarceration, including, without limitation, collaborative justice court programs, diversion, restorative justice, and probation." (Pen. Code, § 17.2, subd. (b).) Given how new this section is, there is not much case law interpreting the section. The California Supreme Court has held that "while section 17.2 states a preference for the least restrictive criminal disposition, the Legislature's use of the words 'available' and 'according to relevant statutes and the sentencing rules of the Judicial Council' indicate that the Legislature did not intend to alter existing statutory requirements." (*People v. Braden* (2023) 14 Cal.5th 791, 818.) For the reasons discussed above, what the trial court did here does not appear to alter statutory requirements as each action the court took falls within its clearly delineated discretion.

/ / /

The Legislature enacted also Penal Code section 1385, subdivision (c), giving more legislative guidance as to what things might be considered to determine whether a decision is in the interest of justice. While subdivision (c) is explicitly related to the dismissal of enhancements, it seems reasonable that courts can consider the factors that courts are to give great weight to in dismissing enhancements in considering whether to dismiss charges or cases under subdivision (a). These factors include mental illness, prior victimization, childhood trauma, and childhood neglect. This is a broader concept of what in the interest of justice might have been conceptualized as at the time of *Gelardi*.

To be clear, this is not a proposal that tentative sentences such as that in *Gelardi* or this case should be commonplace. Instead, the proposal is that *Gelardi* improperly restricts judicial discretion and an analysis of a tentative such as the one in *Gelardi* or this case should focus on whether the court is permissibly following the requirements of Penal Code section 1385 and avoiding impermissible plea bargaining as defined under *Clancey*.

_____
FRANK L. BIRCHAK
Judge, Appellate Division

**HARUTUNIAN, J.**, concurring with **D'ADDEZIO, J.**, joining:

I concur with the majority's decision to reverse, but respectfully disagree with some of their reasoning. I would not limit reversal to reliance on *People v. Municipal Court* (*Gelardi*) (1978) 84 Cal.App.3d 692, and, for the record, disagree with the other concurrence's call to overturn *Gelardi*. A central issue in this case is whether a trial court has inherent authority to grant non-statutory deferred entry of judgment (DEJ). In a case similar in all important respects to the present case, the court in *People v. Marroquin* (2017) 15 Cal.App.5th Supp. 31, 37, held that trial courts may not grant non-statutory deferred entry of judgment. (See also *People v. Tapia* (1982) 129 Cal.App.3d Supp 1, 9). I find *Marroquin*'s discussion of the issues compelling and persuasive, and will not repeat that discussion here. Like the court in *Marroquin*, I do not believe non-statutory DEJ is permitted.

/ / /

**DECISION/STATEMENT OF REASONS (CCP § 77(d)) BY THE COURT**

I also believe the extended duration of the DEJ in this case contributes to the conclusion that it was contrary to law. While I agree with the majority's conclusion that the 120-day limit under Penal Code § 1449 on the setting of the sentencing date is directory, not mandatory, I do not think that renders § 1449 irrelevant. "Directory" does not mean immaterial. The legislature has expressed a desire to bring misdemeanors to judgment within 120 days of conviction. It has also set forth specific cases and scenarios where deferred entry of judgment (i.e., a later sentencing date) is expected (e.g., Penal Code § 1000.8). It would not make sense to conclude that trial courts have inherent and unfettered authority to set sentencings significantly beyond the limit chosen by the legislature, over the objection of one of the parties, and pursuant to a DEJ scenario never sanctioned by statute.

The concurrence of Judge Birchak argues that deferring entry of judgment, and then dismissing under § 1385, is simply the exercise of a court's inherent right to control the disposition of cases. I disagree. Delaying resolution of a case for 15 months is not disposing of it. Granting DEJ is not like deciding whether to grant probation. As the court stated regarding DEJ in *People v. Andreotti* (2001) 91 Cal.App.4th 1263, 1274, "We do not view the deferral option as simply another sentencing choice given to the court." It is well settled a court can dismiss a case under § 1385 if it can identify a basis in the record for concluding that doing so is in the interest of justice. But it cannot graft that right onto a quasi-diversion delay of sentencing not authorized by law. *People v. Marroquin*, *supra*. at 39. This is true regardless of whether the court was acting in good faith, as it was here.

As Judge Birchak's concurrence points out, the legislature has displayed a recent trend to expand sentencing alternatives, such as diversion.  If the legislature wishes to expand DEJ to the circumstances presented here, I believe it needs to provide the statutory authority for doing so.

_____
ALBERT T. HARUTUNIAN III
Presiding Judge, Appellate Division


D'ADDEZIO, J., concurring:

     I concur.


_____
MARYANN D'ADDEZIO
Judge, Appellate Division

Counsel for Appellant, The People:

MARA W. ELLIOTT, CITY ATTORNEY
JONATHAN I. LAPIN
APPELLATE DIVISION
1200 THIRD AVENUE, SUITE 700
SAN DIEGO, CA 92101


Counsel for Respondent, Jacqueline Shanice Robinson:

TROY BRITT
OFFICE OF THE PUBLIC DEFENDER
451 A STREET, STE 900
SAN DIEGO, CA 92101